So I'm assuming that we have one attorney arguing each side, is that correct? That's correct, Your Honor. Okay, and you each have 15 minutes, and if you're the appellant, 15 minutes includes your rebuttal. So if you want to reserve any time, you're in charge of your time, but if you tell me, I'm looking right at the clock. I generally will keep people to their time. However, if anyone in the court is asking you a question, please continue to answer the question, even if the time has expired, even if it's a really hard question. Thank you, Your Honor, and may it please the court, I'm Clifford Sloan for appellants, and I did want to begin by thanking the court for accommodating us. You're really nice. No, I appreciate it. We want to do that when we can. Well, thank you very, very much. But a lot of times people think it's the same people all day, and so it does take a little bit of maneuvering. I understand. And Judge Whaley would like to be sitting right here, but it works really well on video. Great. We greatly appreciate the accommodation. And I would like to save three minutes for rebuttal, Your Honor. Okay. Your Honors, the central issue in this case is whether this court's decision in Sacab v. Luxottica Realty prevents the enforcement of the arbitration agreement as written and as agreed to by the parties. And we respectfully submit that it does not for three reasons. First, the intervening Supreme Court decisions in DirecTV v. Imburgia and Kindred Nursing Center v. Clark establish that Sacab should not be an obstacle. Second, this case is about a choice of law provision. Sacab was not about a choice of law provision, and we respectfully submit that under choice of law principles, the party's choice of law should be respected and enforced in this case. And third, the California Court of Appeals' recent decision in Esparza v. KS Industries just a couple months ago establishes that even when an individual has representative PAGA, Private Attorney General Act, PAGA claims, if the individual has individual claims, personal claims for unpaid wages, compensatory damages, what the Esparza court called victim-specific relief, then those individual claims can, should, and must go to arbitration. And that is the situation in this case. Ms. Manvuala, in addition to the representative PAGA claims, has those individual claims. And so at a minimum, the district court judgment should be reversed with regard to those individual claims. You're saying that the individual claims should go to arbitration and then the PAGA claims would? We would ask the district court to state the PAGA claims. Now, our broader argument is that she's waived the representative PAGA claims. But here, at a minimum. They're secondary. Pardon? That's your secondary. Yes, exactly. At a minimum, we think that the individual claims should go to arbitration, in which case the representative PAGA claims would be stayed. But in addition to that point about? May I ask you a question? Yes. Just to clear things up, as to that third point, is it your position that the damage claims under PAGA, which are representative, are distinct from the individual claims which this plaintiff has? Well, the terminology can get a bit complex here, so let me refer to the terminology in Esparza because I think that actually sets a very clear line. And what Esparza says is that if it's a claim for civil penalties where 75% would go to the state and 25% would go to the employees, that under the Iskanian rule, that is not waived and even that does not go to arbitration. But that if it is a request for the individual that would go 100% to the individual, whether unpaid wages or other kinds of compensatory damages, those should and must go to arbitration if they're covered by the arbitration agreement. As to Manviwala and all the people she represents. No, only as to Manviwala. Yes, to Manviwala. Right, exactly. So what specifically are her claims that would, if we were to agree with your secondary position and say, okay, well, let's, I mean, hypothetically if you lose on the first point, then on the second point you're saying, so what exactly in this case would go to arbitration? So really all six of her claims, which relate to unpaid wages, overtime wages, lack of meal periods, because as to all six of them, she makes a claim for unpaid wages and for compensatory damages. And just so the Court has it, this is in her complaint in the excerpts of record 145 to 146, is the prayer for relief, and then also on pages 139, 141, 143, and 144. On all of those pages, she asks for unpaid wages for herself and also for other employees. But for those for herself, under ESPARZA, those should plainly go to arbitration. And it relates to all six of the claims in her complaint. Okay. And that, though, ESPARZA is a California case, right? Yes. It's a California Court of Appeal case. And so that would only, we would only get to that if Maryland law doesn't apply. That's correct, Your Honor. On that point, may I ask you a question? As to the choice of law provision, do you make a claim that the choice of law should have been decided by the arbitrator rather than the district court? No. We have not asked for that, and neither has the other side. We both have agreed that that's a question for the Court. Thank you. Okay. But I think that the fact that the individual claims will go to arbitration at a minimum and should under ESPARZA, and that's entirely consistent with SACOB, but I think that also has an important bearing on the more fundamental choice of law issue. And let me just briefly go through six reasons why we think that the district court's decision not to give effect to the party's choice of law was erroneous. First, in the Imburgia decision, Justice Breyer emphasized that under the Federal Arbitration Act, the parties have very broad freedom to choose whatever law they would like. And he gave examples of the law of Tibet or pre-revolutionary Russia that the parties could decide on. And here we're just talking about the law of Maryland. Now, second, the fact that, as we've been discussing, Ms. Manvilwala, her substantive claims under the California Labor Code will go to arbitration, and there's no dispute this is a very fair and impartial arbitration project, and she will have a full opportunity in arbitration to pursue every one of her claims and receive 100 percent of what she says she personally is entitled to. That bears heavily on why there is not a fundamental policy here that requires invalidating the party's choice of law, because her substantive rights under California law are going to be fully protected on an individual basis in the arbitration. Third, there's another important point, which is that the waiver, that the rule of Iskanian about waivers, the California Supreme Court rule in Iskanian, is applied very selectively and only against arbitration agreements. It's one of the reasons, and I'll get back to this, why we think that the Supreme Court decisions make clear that SACOB and Iskanian no longer are good law. But just on the choice of law analysis. What? Think what I just heard. Okay, SACOB, the Supreme Court didn't take, they didn't review that. No, they didn't. So it's on the books. But under this Court's, and absolutely it's a precedent, and I recognize. I don't know if it's right, but it is Ninth Circuit precedent. Right, but under the Ninth Circuit standard, if there's an intervening Supreme Court decision, and this is Miller v. Gamey, the en banc decision, if there's an intervening Supreme Court decision that undercuts the theory and reasoning of a panel precedent, such that the precedent is clearly irreconcilable with the Supreme Court decision, the subsequent Supreme Court decision, then the panel should not continue to follow it. It should follow the intervening Supreme Court decision instead. Well, except the Supreme Court's not shy about California and arbitration and the California Supreme Court, and they got it wrong for quite a period of time after Concepcion. But TAGA is very clearly a fundamental policy in California. It's really hard to refute that. But on SACOB, I don't think the employers petitioned for cert on that. I was really surprised. In the SACOB decision itself, they did not. Now, there have been some cert petitions on this issue of Iskanian, and those have not been granted yet. But I would point out that, first of all, the Supreme Court and this Court repeatedly have said cert denials are not precedential. In Concepcion, the Supreme Court had denied cert eight times on that issue before it granted. And in the petitions that have raised the Iskanian issue, there's only been one federal decision, and that one had procedural problems. It was an interlocutory appeal. The others have been directly from state court, and Justice Thomas has taken the position that the Federal Arbitration Act does not apply in state court. So the Supreme Court has denied cert in a handful of cases raising the issue, but we certainly don't think that's preclusive of the Supreme Court's. Now, I follow this pretty closely, though, because I teach employment law. Okay. It's sort of bizarre, but I was kind of surprised. Right. Well, let me just briefly mention, and, of course, we do have now these more recent decisions in Imburgia and Kindred since the SACOB decision. And let me just briefly point to three points about those decisions that we think illustrate why SACOB should not be an obstacle and why, in fact, SACOB is clearly irreconcilable with the Supreme Court precedent. And the first one is that both of those decisions emphasize that just because a policy is neutral on its face, it does not mean that it's not hostile to arbitration. It can still be hostile to arbitration in a way that is fatal under the Federal Arbitration Act, and they include two important identifiers or markers for how to determine that impermissible hostility to arbitration. And that's the second and third point. The second point is that in both Imburgia and Kindred, the Supreme Court made clear that a very important indicator or marker of this impermissible hostility was that neither the state court nor the party opposing enforcement of the arbitration provision could point to a single example of the policy being enforced outside the arbitration context. It was only in the arbitration context. And that is exactly the same thing here. Neither Ms. Manvulawala nor anybody else has ever pointed to this policy being invoked outside the arbitration context. And third, one point that is especially important in the Kindred opinion is that the policy was applied with regard to agreements like settlement agreements. And that's in footnote one of the Kindred opinion. And that is exactly the same thing here. The policy applies to arbitration agreements, but it's very clear in the Iskanian opinion itself and in cases that we've cited in the brief from the California courts such as Villacre that it does not apply in the context of settlement agreements. And again, the Supreme Court has made clear that is exactly the kind of telltale indicator or marker that shows an impermissible hostility to arbitration agreements. And I'd like to reserve the remainder of my time. Okay, thank you. Good afternoon. Good afternoon. If you may, please accord Kevin Mahoney on behalf of the appellees. Can you get really close there? Certainly. I apologize. Thank you. That's great. So first, I think the court need only look at the agreement itself. The agreement that the appellee signed specifically excludes representative actions. The court need not go any further because there is no waiver of the representative action in the agreement. So that's the first point I'd like to make. If the court finds that there is no waiver of a representative action, the court need not go any further. Well, I think as far as I'm interested in the argument on if we apply California law, I'm interested in as far as from the standpoint that it would appear to stand for the proposition that Ms. Mandovala would need to arbitrate her own claims and that the PAGA claims would stay in the court. Correct, Your Honor. And I would agree that that's the holding in as far as the entity. So is there any reason we shouldn't follow that? Are you aware of any authority that conflicts with that? I am not aware of any authority at this point that conflicts with as far as this. So the district court got that wrong? To the extent that there is an actual request for victim-specific relief, correct, Your Honor. Okay. I'm going to have to vacate and remand on that issue. Well, I'm hearing you say that that would be a correct statement of the law if the court, as to that part of, you're not defending that part of the judgment, you're defending the rest of the judgment. Correct. So, yes, if the court found that there is victim-specific relief requested in a complaint, we would not argue against the finding in as far as it. Was there victim-specific relief requested in the complaint? Well, Your Honor. I mean, I heard you roll over and now I'm hearing you roll back a little. Well, what I meant by that is this. In each cause of action, it lays out the private attorney general act, and then the specific labor code. I think... But she is requesting individual relief, is she not? Well, it does say to the extent, it does recognize that Labor Code 558 provides for seeking monies that would essentially make the plaintiff or the class whole. So to that extent, yes, I guess the court can see that. Well, it just would appear that her complaint seeks both civil penalties under PAGA and compensatory damages, and that under ESPARZA, the individual claims have to be arbitrated, and the district court proceedings are to adjudicate the PAGA civil penalties. They should be stayed, it would appear. The district court should be stayed until she comes back from arbitration, right? Is that the way it works? Correct, Your Honor. So with respect to the choice of law, I think the court's statement earlier that PAGA is a fundamental policy is correct. With respect to the choice of law, California has an inherent interest in protecting the employees of the state. Maryland does not have the same type of protections in terms of their labor laws. For instance, there's We are the left coast, too. So Correct, Your Honor. Some people want to be in California and some people don't. Mr. Mahoney, if your interpretation is correct, that would mean there wouldn't be any ability for a nationwide firm to have a nationwide contract uniformly applied, right? Well, I would disagree to the extent that if we're talking about California law, any company that avails itself and does business in the state, and I forgot the name of the case right now, there's a case law that says that they must make themselves aware of the protections of California law. But what I'm saying is that no matter how arm's length or well advised the parties were in entering into an arbitration agreement, and if they were to say, we've had white shoe law firms on both sides of this case, and we've paid them a lot of money and we've consulted everybody and the best Supreme Court advocates, and we want to have a uniform policy for our employees throughout the country. It couldn't be made under this choice of law rationale. I would agree. Okay. And so I think you should spend most of your time on the argument that SACOB has been undermined or actually contradicted by the rationale of the cases that were cited by Mr. Sloan. Well, I disagree that SACOB is undermined by the Ambrosio or the Kindred case. As a matter of fact, if we look at the Ambrosio case, that case specifically dealt with private claims. So that case is totally different from a POG action. I missed those. It dealt with what kind of claims? Private claims. Private claims. Yes. As opposed to POG. As opposed to civil penalties. So SACOB is not undermined by the recent decisions that counsel stated, and there's, I believe, a fourth district that actually ruled that SACOB still stood for the premise. In light of the Ambrosio and the Kindred case, the case was heard after those cases came out, and the fourth district chose to follow SACOB as well. SACOB is still the law of this district. Iskanian has not been overturned. It's not been taken up for cert. And I just believe that defendants have not reached their burden with respect to the law and as well as the law in terms of POG or with respect to the choice of law. How about Kindred versus Clark? I'm drawing a blank on the Kindred case right now. The Kindred is the one where Kentucky required an explicit statement in a power of attorney that the attorney, in fact, has authority to waive principal's right to access the court and enter arbitration. Yes, correct. So the Kindred case dealt with, exactly as Your Honor said, that the agent can waive the principal's right to have their day in court, so to speak. And the court found that that frustrates the FAA. I think the court found that it was a huge barrier for arbitration agreements in Kentucky and failed to put them on an equal plane with other contracts. Correct. But once again, that's still a different proposition than what POG stands for. POG is an agreement between the state and the employer. It's still not the Kindred case still does not undermine Sakab or Iskanian. POG doesn't involve an agreement between the state and the employer. It involves a statute. Correct. But POG specifically deputizes the employee. And so what Iskanian and Sakab basically says is, look, at the end of the day, we've empowered the employee to seek penalties, civil penalties, on behalf of the aggrieved employees. That's very different from the Kindred case, in my opinion. And if Your Honors have any further questions. Judge Welley, do you have any questions? No. All right. We don't appear to. Thank you. Thank you very much. A few brief points, Your Honors. First, my colleague said that the agreement doesn't cover this situation. I just wanted to point the court in the agreement, and this is an excerpt of record, page 65. It says that the employee that Ms. Manvuala agrees to pursue claims on an individual basis only. It could not be more explicit. And so it clearly is covered, and obviously the district court thought it was covered. But in light of that language, I think there's not room for a dispute about whether the language covers it. Secondly, I think it's notable that my colleague did not mention anything in response to the point about the impermissible markers that both Imburgia and Kindred have established. Namely, again, that there's no other context in which it's been invoked, and that there's a very starkly differential treatment between arbitration agreements and settlement agreements. Again, footnote one of Kindred. And again, neither Ms. Manvuala or anybody else has ever pointed to an instance where this policy has been invoked outside of the arbitration context. That is fatal under the Federal Arbitration Act. And third, my colleague mentioned that it relied heavily on the idea that these are penalties and that it's an agreement with the state, or it's on behalf of the state. And a few points about that. First of all, this is obviously a preemption inquiry, supremacy clause, Federal Arbitration Act. There's no exemption for states to label something penalties. That's not what the question is under the Federal Arbitration Act. The question is whether there's a hostility to arbitration and whether it interferes with the fundamental attributes of Again, there's no exemption for penalties. And in any case, these cases like Imburgia and Kindred and Concepcion emphasize that one has to look at the realities, not the labels that are put on it. And the reality is that the individual employee here controls all aspects of the litigation. The state has no role. She has to go to the state. And when the state declines, it's entirely up to the private individual whether to file suit or not. It's entirely up to the private individual how to conduct the litigation. It's entirely up to the private litigation whether to settle, whether to waive the Representative Paga claims there. So this policy, which is hostile to arbitration and interferes with the fundamental attributes of arbitration, cannot be saved by saying, well, it's actually on behalf of the state. It has to do with the private individual, and she's the one who signed the agreement with the employer. And the very, very high bar that needs to be met to be setting aside that agreement and rejecting the arbitration part of it has not been satisfied. Thank you, Your Honor. All right. Thank you both for your argument.
judges: Callahan, Bea, Whaley